FLY *v*. SCREETON.

Opinion delivered June 12, 1897.

FRAUD.—PURCHASE FROM INSOLVENT.—A sale of property by an insolvent debtor to a creditor at a fair price, to pay a debt, is not rendered invalid by the purchaser's knowledge of the debtor's intention to defraud other creditors, if the purchaser does not purchase with a fraudulent design. (Page 187.)

SAME.—A creditor of an insolvent debtor may purchase property from the latter of greater value than the amount of his debt at a fair price, and reserve out of the purchase money sufficient to satisfy his debt, and pay the residue to the debtor, although he 'knows that the object of the debtor is to defraud other creditors, if the debtor cannot sell a lesser quantity without materially injuring the sale or value of the portion remaining unsold. (Page 187.)

SAME—CONSIDERATION.—The fact that the price paid an insolvent debtor by a creditor for a stock of goods only amounts to fifty cents on the dollar of its invoice price is not conclusive evidence of fraud. (Page 187.)

Appeal from Prairie Circuit Court, Southern District

J. P. ROBERTS, Special Judge.

Fly & Hobson and Erb & Co. brought replevin against E. R. Screeton, sheriff of Prairie county, to recover a lot of shoes. Defendant answered denying plaintiffs' title, and alleging that he held the goods under attachment in favor of Arnold & Co. against plaintiffs' vendors, Thweatt & Cooper.

The evidence was to the effect that plaintiffs purchased the goods from the insolvent firm of Thweatt & Cooper; that the consideration was $825, which was about one-half of the invoice

price of the goods; that the consideration was paid in this way, viz., by allowing the vendors credit for $380, the amount due by them to plaintiffs, and by paying to them the residue ($445) in money.

The court refused the request of plaintiffs for the following instructions: "(3) The jury are instructed that if they find there was a sale of the goods, and at the time of the sale by Thweatt & Cooper they were indebted to plaintiffs, and the plaintiffs were *bona fide* purchasers for a valuable consideration, the plaintiffs had a right to satisfy their claim, and pay balance of purchase money, unless they knew at the time their purpose was to defraud their creditors. (4) If the jury find that the plaintiffs were creditors of Thweatt & Cooper, and were *bona fide* purchasers of the stock of goods for a valuable consideration, and, having satisfied their claims against said firm, paid balance of purchase money of goods to them with the distinct understanding that same would be paid to their creditor, they must find for the plaintiff. (5) If the jury find from the evidence that plaintiffs' vendors sold said stock of goods to them in good faith, and for a valuable consideration, for the purpose of paying their debts, and did use the entire proceeds of sale for that purpose, they should find for the plaintiff. (6) An insolvent debtor may sell his property, and if the transaction be an honest one, in good faith, and for a valuable consideration, it matters not how many creditors may be thereby prevented from reaching the property."

At defendant's instance, the court gave the following instructions: "(1) The jury are instructed that the law will not be blinded by form, and the bill of sale in this case does not pass the title to the property herein, as against the attaching creditors, unless the whole transaction was in good faith; and if you find that the trade was not in good faith, on the part of the plaintiffs, then you should find for the defendant, if the plaintiffs knew at the time that Thweatt & Cooper were in failing circumstances. (3) The jury are instructed that a creditor bargaining with his debtor, who is in failing circumstances, does so at his peril, and must not knowingly by any means assist the debtor to defeat the claim of any other creditor; if he does, he takes no title as against such creditors. (4) You are instructed that while it is

true that a creditor of a failing merchant has a right to buy the stock, or a portion thereof, in order to save his claim, yet you are further instructed that he has no right to buy more than is necessary to save himself. If he knows at the time that there are other creditors, and if from the evidence you find that Fly & Hobson and Erb & Co., either in person or through their agent, bought the stock of Thweatt & Cooper, and in doing so bought more than was necessary to pay their claim, and paid in cash to Thweatt & Cooper $440, or any other sum, then this is a fraud upon other creditors, provided at the time of such purchase they knew, or had reason to know, that there were other creditors of Thweatt & Cooper; and it makes no difference what was done with the cash so paid to Thweatt & Cooper or their representatives. (5) You are further instructed that if, from the evidence in this case, you find that, in buying this stock, the plaintiffs, through their agent, paid only 50 cents on the dollar, or thereabout, of the invoiced price, then this is conclusive of fraud; that if from the evidence as a whole you find that in the purchase of this stock the conduct of the plaintiffs and Thweatt & Cooper has been such as to defraud the other creditors, and in fact did have that effect, then it makes no difference what may have been the intention of the plaintiffs in purchasing this stock, you will find for the defendant. (6) The jury are instructed that if they find that Thweatt & Cooper were in failing circumstances, and the plaintiffs herein bought the stock of goods, knowing these facts, or facts such as would put a reasonable man upon inquiry, and that plaintiffs paid only about fifty per cent. of the invoice price, that is a fraud upon the other creditors, and you should find for the defendant."

Verdict and judgment were in favor of defendant.

*J. H. Harrod,* for appellants.

The court erred in its instructions to the jury. Appellants bought the goods at a fair price to pay *bona fide* debts, and paid the balance in cash. This did not constitute a fraud. 42 Ark. 521; 56 *id.* 414; 47 *id.* 515; 37 *id.* 580.

*J. M. McClintock* and *Eugene Lankford,* for appellees.

This was a scheme to defeat creditors. A conveyance with

intention to defeat one creditor is sufficient. 37 Ark. 560. It is true that a debtor may prefer a creditor, but the creditor must not buy more than enough to satisfy his debt and he must pay a fair price for the goods. Sand. & H. Dig., § 3472.

BATTLE, J. The circuit court erred in refusing and granting requests for instructions to the jury. The insolvency of debtors does not deprive them of the right or power of making *bona fide* sales of their property. They may do so for the purpose of paying their debts. Any creditor may purchase at such sale at a fair price, and out of the purchase money reserve a sufficiency to pay his own debt, and pay the remainder to the debtor.

A sale of property by an insolvent debtor to a creditor at a fair price, for the purpose of paying a debt, is not rendered invalid by the purchaser's knowledge of the vendor's intention to defraud other creditors, if the purchaser does not participate in the fraudulent design. A creditor has "the right to insist upon and take a preference for his own debt," and purchase of his debtor property for that purpose, without subjecting himself to the imputation of fraud. If it be necessary to effect this object, he may purchase property of greater value than the amount of his debt, at a fair price, and reserve out of the purchase money sufficient to satisfy his debt, and pay the residue to the debtor, although he may know at the time that the object of the debtor is to deprive other creditors of the means of collecting their debts. This may occur when the debtor cannot sell enough property to satisfy the debt without materially injuring the sale or value of other property, as in the case of a stock of goods where the sale of a considerable part would materially injure the sale of the remainder.

The fact that the price paid an insolvent debtor by a creditor for property only amounts to fifty cents on the dollar of its invoiced price is not conclusive evidence of fraud. The value of property is not determined by its invoice price, but by its condition at the time of the sale—by the market price thereof when sold. Reversed and remanded for a new trial.

Absent, BUNN, C. J.

NOTE.—As to a creditor's right to buy property from his debtor in satisfaction of his debt, see note to *Feder* v. *Ervin* (Tenn.), 36 L. R. A. 335. (Rep.)