## Joseph CALLUM *v.* FARMERS UNION MUTUAL INSURANCE Company

73-295                                    508 S.W. 2d 316

Opinion delivered April 8, 1974
[Rehearing denied May 13, 1974.]

*Paul K. Roberts,* for appellant.

*Charles A. Wade,* for appellee.

J. FRED JONES, Justice. This is an appeal by Joseph Callum assigning as error the refusal of the Bradley County Circuit Court to award statutory penalty, attorney's fee and costs against the appellee Farmers Union Mutual Insurance Company in a suit by Callum against the insurance company which resulted in a judgment in favor of Callum for the full face value of $5,000 on a fire insurance contract.

The facts are briefly these: Lonnie Callum was a widower at the time of his death on September 15, 1970, and was survived by six sons and four daughters. Prior to his death Lonnie Callum had procured a fire insurance policy from the appellee insurance company in the amount of $5,000 on a small home he owned. In August, 1970, prior to Lonnie's death, a premium came due on his policy and Lonnie being financially unable to pay the premium, his son Joseph, who was visiting him at the time, did pay the premium and the policy was renewed with "Lonnie Callum &/or Joseph Callum" as the named insured. The policy contained a provision as follows:

"The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made. . . . "

The policy also contained a provision as follows:

". . . and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location. . . . ."

As already stated, Lonnie Callum died on September 15, 1970, and the dwelling house and contends were totally destroyed by fire on May 31, 1973. On August 3, 1973, Joseph Callum filed his complaint in circuit court alleging the issuance of the policy, the death of Lonnie Callum, the destruction of the property, and the coverage under the policy as above set out. Joseph alleged in his complaint that he had given the defendant insurance company notice of loss and had executed a proof of loss as required by the terms of the policy, but, that notwithstanding the notice and proof of loss, the company had failed and refused to pay the loss and damage or any part thereof. Joseph then prayed judgment in the amount of $5,000, together with statutory penalty of 12%, a reasonable attorney's fee and costs.

On August 17, the insurance company filed an answer admitting the issuance of the policy, the death of Lonnie Callum, the occurrence of the fire and destruction of the insured property on May 31, 1973, and admitted that it was liable under its policy for the sum of $5,000. It alleged that it had tendered the payment of the amount it owed under the policy and was not liable for penalty and attorney's fee. The insurance company tendered the amount of $5,000 into the registry of the court with its answer.

The case was submitted to the trial judge sitting as a jury and on September 26, 1973, the trial court ordered that the $5,000 deposited in the registry of the court be paid to Joseph Callum without prejudice to his right to appeal on other points contained in his cause of action, and on the same date the trial court entered judgment against the insurance company for the sum of $5,000. The court denied Joseph's prayer for penalty, attorney's fee and court costs and, as already stated, Joseph contends that the trial court erred in failing to assess penalty, attorney's fee and court costs against the defendant insurance company.

The appellant, Joseph Callum, testified as to the death of his father, as above set out, and testified that he, Joseph, has five brothers and four sisters. He testified that after his mother's death his father continued to live in the home alone until his death. He said that when he was visiting his father in August, 1970, he was advised by Mr. Henderson, an agent of the appellee insurance company, that his father was about to drop his fire insurance. He said he told his father he would start paying the insurance premium and that he did so. He said he made the premium payments when due and kept the policy in force until the house and contents were destroyed by fire on May 31, 1973. He said that following the loss, he first talked to Mr. Henderson when Henderson brought a company check in the amount of $4,500 to his home about 30 days after the loss. He said the check was made payable to Lonnie Callum's estate and Joseph Callum. He said he told Mr. Henderson he did not think the check was made out properly, to the right person, and refused to accept the check. He said he had no further conversation with Mr. Henderson. He then testified that he went to his attorney's office sometime in June, 1973, and that his attorney wrote a letter to the insurance company for him and he signed the letter.

On cross-examination Joseph Callum testified that his father owned the house involved and he supposed he owned the insured contents. He said he himself claimed no ownership interest in the property and did not know whether his brothers and sisters claimed any interest in the proceeds from the insurance or not. He restated, under questioning by the court, that his father died on September 15, 1970, and the fire occurred on May 31, 1973.

The letter above referred to, as written by Mr. Callum's attorney, was dated June 27, 1973; was addressed to the insurance company, and reads as follows:

"This letter is to give you notice of loss in the dwelling and household goods insured by your policy No. 80, 087, said policy having been issued to Lonnie Callum &/or Joseph Callum. Both the dwelling and the household goods insured were total losses. This loss occurred on June 7, 1973.

This notice of loss is being given you in spite of the fact that your agent, Mr. Henderson of Rison, Arkansas, has already been notified of the loss.

Also, please consider this letter to be a demand for $4,-000.00 for loss of the dwelling and $1,000.00 for loss of the household goods.

I am enclosing Certified Copy of Death Certificate showing that my father, Lonnie C. Callum, the same person as Lonnie Callum, departed this life on 9-15-70.

You are invited to inspect the premises to determine that the losses are total.

Your immediate attention to this matter will be appreciated."

Curtis Callum testified that he is a brother of Joseph Callum and was familiar with the fact that his father had a fire insurance policy on his home. He said he had met Mr. Henderson, the insurance company agent, at his father's home, but was not present at the conversation between his father, Mr. Henderson and his brother Joseph when the policy was renewed, as testified to by Joseph. He said that when the house burned, he notified Mr. Henderson by telephone about three days after the fire. He said Mr. Henderson inspected the premises and that he told Mr. Henderson he was the administrator of his father's estate. He said he had not been appointed administrator by probate court order, but had been designated by his father as well as his brothers and sisters to look after the estate matters.

Curtis testified that he received a check from the insurance company for $4,500, and that he and his brother Joseph took the check to their attorney (Mr. Roberts); that Mr. Roberts mailed the check back to Mr. Henderson along with a letter of transmittal signed by him (Curtis). He said that they did not think the check was made out properly. He said that after the first check was returned, he received another check for $5,000 made payable to Lonnie Callum's estate and Joseph Callum. He said he also took that check to Attorney Roberts as he still thought it was not made out right. He said Mr. Roberts sent that check back with a letter of transmittal which he signed and which his attorney mailed. He said he had had no further conversation with Mr. Henderson since the check for $5,000 was returned.

It was stipulated that there was no legal administration on the estate of Lonnie Callum. The two letters referred to by Curtis as having been signed by him and mailed by his attorney were dated July 7, 1973, and August 2, 1973. The one dated July 7 was addressed to agent Henderson and reads as follows:

> "Enclosed please find Check No. C3370 A, of the Farmers Union Mutual Insurance Company, in the sum of $4,500.00 made payable to the Lonnie Callum Estate.

> I do not understand the beneficiary of the above numbered policy to be the Estate of Lonnie Callum. Therefore, I am returning this check to you."

The other letter dated August 2 was to the insurance company in answer to a letter dated July 30, 1973, from the insurance company and was written on the bottom of the insurance Company's letter in a space left for reply. The letter from the insurance company was signed by Richard Hopkins, Claims Adjuster, and recited as follows:

> "Enclosed please find our check in the amount of $5,-000.00. This is in accordance with our conversation."

The answer recited as follows:

> "Dear Sirs:
> Enclosed please find check in the sum of $5,000.00, Check No. C 3582 A.

I have not been appointed Administrator of the Estate of Lonnie Callum."

Following the above evidence and the argument of counsel, the court rendered a finding as follows:

"The Court finds that Joseph had, actually, a private contract of insurance after the death of his father with the Insurance Company, and that the Company didn't want to pay it directly to him through a precaution, and I think rightfully so. The Court is treating the Answer as an Interpleader, and finds that the check should be delivered to Joseph Callum personally. And, that will be the Order of this Court. No attorney fee. No penalty."

We are of the opinion that the trial court was correct in its refusal to assess statutory penalty, attorney's fee and costs. The statutory provision for penalty and attorney's fee, Ark. Stat. Ann. § 66-3238 (Repl. 1957), insofar as it pertains to this case, recites as follows:

"In all cases where loss occurs . . . and the . . . insurance company . . . liable therefor shall fail to pay the same within the time specified in the policy, after demand therefor, such corporation . . . shall be liable to pay the holder of such policy . . ., in addition to the amount of such loss, twelve per cent (12%) damages upon the amount of such loss, together with all reasonable attorneys' fees for the prosecution and collection of said loss. . . ."

We have previously said that this statute is highly penal in nature and is to be strictly construed. *National Fire Ins. Co.* v. *Kight*, 185 Ark. 386, 47 S.W. 2d 576.

Under the state of the record in this case, we find it unnecessary to cite or discuss any of the numerous decisions of this court dealing with statutory penalties and attorney's fees in cases of interpleader, or where question arises as to who is the insured, or who is entitled to the proceeds when more than one is making demand therefor, for the reason that in the case at bar the appellee insurance company did not deny it owed the claim and did not, at any time, refuse to pay it.

On the contrary, the insurance company admitted it owed the claim and made an effort to pay it even before a claim was ever made by Joseph Callum. After suit was filed by Callum, the insurance company still admitted its liability and paid the full amount it owed into the registry of the court well within the 60 day period provided in the contract for the payment under it.

The judgment is affirmed.