James SOUTHALL *v.* FARM BUREAU MUTUAL INSURANCE COMPANY OF ARKANSAS

82-42                                            632 S.W.2d 420

Supreme Court of Arkansas
Opinion delivered May 10, 1982

*Cliff Jackson, P.A.,* and *Miller, Jones & Goldman, P.A.,* for appellant.

*Laser, Sharp & Huckabay, P.A.,* for appellee.

GEORGE ROSE SMITH, Justice. This suit was tried in the court below as a test case to determine whether an insurance policy covering loss caused by hail includes loss caused by sleet. The Court of Appeals certified the case to us as presenting an issue of public interest, because a number of other pending cases may be affected by the decision. Rule 29 (4) (b).

The plaintiff Southall, the insured, introduced proof to show that on January 11, 1978, sleet fell all day long and into the night. The next morning Southall found that the accumulation of about four inches of sleet on top of his chicken house had caused it to collapse. In this suit upon the policy the court instructed the jury that the term "hail" as used in the policy should be given the meaning ordinarily applied to that term in the everyday affairs of life. The jury's verdict was for the insurance company.

The extended-coverage section in the policy provides that "the coverage of this policy is extended to include direct loss by . . . hail. . . . " Later in the same section is this limitation: "Provisions Applicable Only to Windstorm and Hail: This Company shall not be liable for loss caused directly or indirectly by (a) frost or cold weather or (b) ice (other than hail) . . . . "

At the trial there was undisputed testimony that the word "hail" includes large hail, small hail, winter hail, and sleet. A witness employed by the Weather Service testified that hail is so defined in a recognized meteorological dictionary. Webster's Second New International Dictionary

(1939) is to the same effect, subdividing hail into summer hail and winter hail. In a case directly in point it was held that a policy covering loss by hail includes loss by sleet. *Evana Plantation* v. *Yorkshire Ins. Co.*, 214 Miss. 321, 58 So. 2d 797 (1952). No case to the contrary is cited. In fact, at the trial the appellee's vice-president conceded on the witness stand that the sleet on the roof of the plaintiff's chicken house was small hail.

The trial court was in error in instructing the jury that the term "hail" was to be given its everyday meaning. An insurance policy is to be construed strictly against the insurer, who chooses its language. The construction and legal effect of written contracts are matters to be determined by the court, not by the jury, except when the meaning of the language depends upon disputed extrinsic evidence. *Ark. Rock & Gravel Co.* v. *Chris-T-Emulsion*, 259 Ark. 807, 536 S.W.2d 724 (1976); *Security Ins. Co.* v. *Owen*, 252 Ark. 720, 480 S.W.2d 558 (1972). In the interpretation of a contract negotiated between individuals no doubt there might be conflicting testimony presenting an issue of credibility for the jury with respect to the meaning of the language used, but there was no such issue in this case. The court should, if appropriate, have instructed the jury that the word "hail" as used in the policy included sleet.

The appellee's vice-president testified that he construed a "direct loss" by hail to mean only the damage caused by the initial impact of the hail, but we have held that a direct loss is one proximately caused by the hazard insured against. *Farmers Union Mut. Ins. Co.* v. *Blankenship*, 231 Ark. 127, 328 S.W.2d 360 (1959). If the weight of the hail damaged the chicken house, the hail was the proximate cause of the loss, absent some other possible cause. It is also argued that the policy did not cover loss caused by ice, but that argument is refuted by the language we have quoted, that the company shall not be liable for loss caused directly or indirectly by *ice other than hail.*

The judgment must be reversed, but the record does not support the appellant's argument that we should enter judgment here. There may be an issue of proximate causa-

tion to be submitted to the jury upon a retrial, because it does not appear to be an undisputed fact that the collapse was caused by an accumulation of sleet rather than of snow.

Reversed and remanded.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I disagree with the majority opinion because I think the jury and the insurance company were right. One typical weather report (January 11, 1978) stated:

> By mid-morning light freezing rain, sleet and snow covered much of central and southwest Arkansas. The area coverage is expected to continue to increase over the state today . . . while from one to three inches, which includes a mixture of snow, sleet and freezing rain is forecast for the southern section.

The appellant had insurance with the appellee. His insurance was evidenced by a standard fire insurance policy with an attached extended coverage endorsement. The extended coverage is a named peril insurance endorsement. In this case the coverage was extended to specifically include direct loss by "windstorm, hail, explosion, riots . . . " and a number of other named occurrences. The policy went on to define certain terms and under one such paragraph, headed: "Provisions Applicable Only to Windstorm and Hail," said, "This Company shall not be liable for loss caused directly or indirectly by (a) frost or cold weather or (b) ice (other than hail), snowstorm, waves, tidal wave, high water or overflow, whether driven by wind or not." I agree with the appellant that the extended coverage endorsement applied only to direct loss by hail. This could mean damages such as puncturing the roof, denting the sides, breaking windows or other damage caused by the impact of hail.

I would affirm.